# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

### CASE NO.: 6:19-cv-01484-CEM-LRH

| | |
|---|---|
| LOGAN BACHSTEIN, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>DISCORD, INC., a for-profit corporation,<br><br>    Defendant. | **DEFENDANT'S MOTION TO TRANSFER OR, IN THE ALTERNATIVE, DISMISS PLAINTIFF'S COMPLAINT [D.E. 1] AND INCORPORATED MEMORANDUM OF LAW** |

Defendant Discord, Inc. ("Discord"), through undersigned counsel, and pursuant to 28 U.S.C. § 1404(a) respectfully requests that this Court transfer the Complaint [D.E.1] filed by Plaintiff Logan Bachstein ("Plaintiff") to the U.S. District Court for the Northern District of California. Alternatively, pursuant to Federal Rule of Civil Procedure 12(b)(2), (b)(6) and Local Rule 3.01, Discord respectfully requests that this Court dismiss Plaintiff's Complaint for lack of personal jurisdiction or failure to state a claim upon which relief can be granted.

In support of this Motion, Discord states as follows:

## I.    INTRODUCTION

Plaintiff's claims against Discord should be transferred or dismissed. Plaintiff failed to file this lawsuit in the proper forum, Plaintiff has not provided a basis for this Court to exercise personal jurisdiction over Discord, and Discord cannot be held liable to Plaintiff under any theory.

Plaintiff is a registered user of Discord, an online communications platform that allows people to communicate through channels, which include forums, communities, and chat rooms. While in one of these forums, Plaintiff encountered another user named "Duke," corresponded

with this other user, and then decided to give this other user access to Plaintiff's computer to help Plaintiff retrieve his Bitcoin, a type of virtual currency. Unfortunately, instead of helping Plaintiff, this other user apparently stole Plaintiff's Bitcoin. But instead of suing the user, Plaintiff has decided to sue Discord.

The lawsuit against Discord fails for multiple reasons.

First, the case is filed in the wrong court. When signing up for Discord, Plaintiff agreed to its Terms of Service ("Terms"), which contain a forum-selection clause requiring any federal action against Discord to be brought in the Northern District of California. Plaintiff improperly filed this lawsuit in this District, and under the plan language of the applicable Terms, the lawsuit must be transferred to the Northern District of California.

Alternatively, Plaintiff's claims should be dismissed for lack of personal jurisdiction, as Discord has no connection to this forum and there is no basis for general or specific jurisdiction.

Finally, Plaintiff has not sufficiently pled his claims and, even if he had, his claims are foreclosed by applicable law and the plain language of the Terms. First, Plaintiff's claims are barred by the federal Communications Decency Act, 47 U.S.C. § 230(c)(1) ("CDA"), which immunizes service providers like Discord from liability for allowing content or choosing not to remove content from their services. At bottom, under the CDA, Discord cannot be held liable for the unlawful conduct of the user who stole the Bitcoin from Plaintiff.

Second, the Complaint also fails to state any cognizable claim against Discord. Plaintiff has not pled the elements of his claims and the Terms expressly provide that Discord is not liable to Plaintiff in these circumstances. Under the Terms:

- Users are required to acknowledge that any user content, including chats, posted by other users are neither endorsed nor controlled by Discord;

- Discord disclaims any liability for interactions between users;

- Discord disclaims any obligation to monitor chatrooms;

- Discord expressly states that it is not responsible for information that users choose to share on Discord's channels or for the actions of other users; and

- Discord explains that it is not liable for any lost data arising from use of its service.

Compounding these deficiencies, Plaintiff rests his entire complaint on an unsupported allegation: that the user who stole his Bitcoin is employed by Discord because he is a moderator. This allegation is implausible because (1) Plaintiff's own Complaint contradicts itself on this point by pointing to a news article that confirms Discord does not have moderators on staff and (2) Plaintiff claims that he asked Discord for the identity of the user and concedes that Discord did not know such user's identity. And regardless, the allegation does not change that the lawsuit is brought in the wrong court, there is no basis provided for exercising personal jurisdiction over Plaintiff, and that Plaintiff has otherwise failed to sufficiently plead his claims.

Ultimately, if Plaintiff has any remedy, it is against the person who misappropriated his Bitcoin, not against Discord, which just happens to be the online forum through which the user contacted Plaintiff and nothing more. Accordingly, and as set forth more fully below, Discord respectfully requests that the Court transfer or dismiss Plaintiff's claims.

## II.    FACTUAL BACKGROUND

### A.    Discord's Business and Service.

Discord is a free online platform with over 250 million users. [Compl. ¶¶ 2-3.] Discord provides various communication channels such as forums, communities, or chat areas to enable people to communicate regarding their common interests. [*Id.*] Discord's forums are moderated by other users of Discord's service. [*Id.* ¶ 18.] As referred to in the Complaint, Discord does not employ moderators. [*See id.* ¶ 5 n.2 (citing https://gizmodo.com/how-a-video-game-chat-client-

3

became-the-web-s-new-cessp-1792039566) ("[Discord] has only five 'customer experience'

personnel and *no moderators on its staff*.") (emphasis added); Declaration of Sean Li ("Li

Decl.") ¶ 8.; Declaration of Julie E. Schwartz ("Schwartz Decl."), Ex. A[1].] Discord is

headquartered and located in San Francisco, California. [Compl. ¶ 10.] Discord does not have

any offices or employees in the State of Florida and is not registered to do business there. [Li

Decl. ¶¶ 6-7.]

> **B.      Plaintiff's Agreement to Discord's Terms.**

To use Discord, a person must first create an account and affirmatively agree to Discord's

Terms and Privacy Policy. [Li Decl. ¶ 10.] Plaintiff signed up for Discord on February 21, 2016[2]

and completed a signup process that required him to first enter his email address. [*Id*.] He was

presented with a message that, by registering for Discord, he was agreeing to the Terms and

Privacy Policy, which were linked to the message. [*Id*. ¶ 11.] To complete the signup process,

Plaintiff had to click the button signifying that he agreed to the Terms and Privacy Policy. [*Id*.]

The Terms in place at the time Plaintiff signed up for Discord contained a forum-

selection clause designating Santa Clara, California as the sole venue for all disputes arising in

---

[1] For purposes of its Rule 12(b)(6) motion to dismiss, Discord requests that the Court deem Exhibits A-B attached to the Schwartz Declaration and Exhibits C-G to the Li Declaration incorporated by reference, as the website (Exhibit A to Schwartz Declaration), Community Guidelines (Exhibit B to Schwartz Declaration) and Terms (Exhibits C-G to Li Declaration) are referenced in the Complaint, their authenticity cannot be disputed, and the documents are central to Plaintiff's claims that Discord can be liable to Plaintiff for the actions of moderators. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). Alternatively, Exhibits A and B to the Schwartz Declaration are websites subject to judicial notice. *Setai Hotel Acquisition, LLC v. Miami Beach Luxury Rentals, Inc.*, No. 16-21296-Civ-Scola, 2017 WL 3503371, at *7 (S.D. Fla. Aug. 15, 2017). The remaining evidence in the Li Declaration is intended to support Discord's motion to transfer and Rule 12(b)(2) motion to dismiss, and Discord does not reference or rely on it in connection with the Rule 12(b)(6) motion.

[2] At that time, Discord Inc. was named Hammer & Chisel Inc.

connection with Discord's services. [*Id.*, Ex. C.] The Terms also specified that California law applies. [*Id.*] Notably, among other things, the Terms also provided that Discord does not monitor chat rooms, does not control or endorse communications from other users, and that it cannot be liable for injuries resulting from interactions between users on the service.  [*Id.*]

Plaintiff concedes that the Terms (as well as the Community Guidelines) are binding. [Compl. ¶¶ 6, 8, 25, 108.] Nonetheless, on August 12, 2019, Plaintiff filed his lawsuit in this Court, ignoring the agreed-upon forum selection clause and other provisions of the Terms that foreclose his lawsuit entirely. [D.E. 1.]

### C.     Plaintiff's Allegations Against Discord.

Plaintiff's claims arise from his interactions on Discord with a user named "Duke." Plaintiff met the user in a Discord channel called "Premium Signals," which is a forum for people with an interest in Bitcoin and other cryptocurrencies. [Compl. ¶ 17.] Plaintiff claims that this user served as the moderator for this channel.  [*Id.* ¶ 20.]

Plaintiff alleges that moderators are individuals who administer and facilitate channels or chatrooms. [*Id.* ¶ 18.] He claims that "[a] moderator's duties might range from introducing discussion topics, facilitating ongoing discussions, reviewing links published in the chatroom, notifying administrators about abusive or disruptive chatroom members, and enforcing Discord's community rules and guidelines." [*Id.*] He also claims that moderators are "tasked with troubleshooting and providing support and/or services for [Discord's] users." [*Id.* ¶ 79.] Plaintiff claims that the user who misappropriated his Bitcoin was one of these "moderators" and therefore had these same duties or responsibilities. [*Id.* ¶ 80.]

According to Plaintiff, on or about June 6, 2018, the user offered to remotely access Plaintiff's computer to help him recover newly forked Bitcoin in his digital wallet. [*Id.* ¶¶ 29,

49.] However, instead of helping him, the user accessed the Bitcoin stored in Plaintiff's digital wallet and transferred it to their own wallet. [*Id.* ¶¶ 30, 31, 94.] Upon discovering the user's misappropriation, Plaintiff immediately notified Discord. [*Id.* ¶¶ 59-61.] Discord responded that it did not have any information that could help identify or track the user. [*Id.* ¶¶ 60-63.]

Although Discord could not identify the user, Plaintiff claims that Discord should be liable because the user was a moderator and, therefore, a Discord employee. [*Id.* ¶¶ 101-103.] Plaintiff claims that Discord failed to properly train, supervise, run background checks, or gain basic information on the identities of moderators. [*Id.* ¶¶ 85-86, 107, 111.] Plaintiff's allegation about Discord's purported relationship with the user are contradicted by an article cited in his Complaint that says Discord does not have moderators on its staff. [*See id.* ¶ 5 n.2 (citing https://gizmodo.com/how-a-video-game-chat-client-became-the-web-s-new-cessp-1792039566) ("[Discord] has only five 'customer experience' personnel and ***no moderators on its staff***.") (emphasis added); Schwartz Decl., Ex. A.]

Plaintiff also alleges that Discord failed to enforce its Terms, Community Guidelines, or rules of conduct, or to implement steps, protocols, or procedures to eliminate criminal activity on its site. [Compl. ¶¶ 88, 90-91, 108-109, 111-112, 114.] Plaintiff maintains that, due to Discord's actions or omissions, Plaintiff is entitled to damages. [*Id.* ¶¶ 92, 109, 115.] Plaintiff again fails to appreciate that the Terms, which govern and, disclaim the obligations Plaintiff claims Discord assumed and that Discord cannot be liable for the actions or conduct of the people who use its service.

Plaintiff brings claims for negligence (Count 1), aiding and abetting conversion (Count 2), respondeat superior (Count 3), negligent training and supervision (Count 4), and negligent

hiring and retention (Count 5). Plaintiff's claims fail as a matter of law and they cannot be cured by amendment. The case should therefore be transferred or dismissed with prejudice.

## III.    ARGUMENT

### A.    Plaintiff's Claims Should be Transferred to the Northern District of California.

As a preliminary matter, Plaintiff's claims against Discord should be transferred to the U.S. District Court for the Northern District of California because the parties agreed to a forum-selection clause providing that "[a]ny claim or dispute between you and [Discord] that arises in whole or in part from these Terms or your use of the Service ... shall be decided exclusively by a court of competent jurisdiction located in Santa Clara County, California … ." [Li Decl., Ex. C.]

As a general rule, "'[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause.'" *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 62 (2013). The plaintiff "bear[s] the burden of showing why the court should not transfer the case to the forum to which the parties agreed" and "[t]he plaintiff's subsequent choice of forum merits no weight." *Id.* at 63-64. "[T]he practical result is that a forum-selection clause should control except in unusual cases" and "[o]nly under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.* at 62, 64 (internal quotation marks omitted). Here, the parties' forum-selection clause is mandatory, applicable, enforceable and, under 28 U.S.C. § 1404(a), requires transfer of Plaintiff's claims.

### 1.    The Forum-Selection Clause is Mandatory

Mandatory forum-selection clauses are presumptively valid and should be enforced absent a strong showing that enforcement would be unfair or unreasonable. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-95 (1991) (upholding the validity of a forum-selection

clause). Here, Discord's forum-selection clause is mandatory because its language designates an exclusive forum. Specifically, the Terms in place when Plaintiff registered for Discord provide:

> [a]ny claim or dispute between you and [Discord] that arises in whole or in part from these Terms or your use of the Service ... shall be decided exclusively by a court of competent jurisdiction located in Santa Clara County, California, and you hereby consent to, and waive all defenses of lack of personal jurisdiction and forum non conveniens with respect to venue and jurisdiction in the state and federal courts of Santa Clara County, California.

[Li Decl., Ex. C.] This language is unambiguous—the only venue where covered claims can be brought is in Santa Clara County, which falls within the Northern District of California.[3] Thus, the forum-selection clause is mandatory and should be enforced.

### 2.       Plaintiff's Claims Fall Within the Scope of the Clause

In addition, the scope of the forum-selection clause encompasses this dispute. The scope and enforcement of a forum-selection clause is a matter of contract. *AutoNation, Inc. v. Hall*, No. 10-60291-CIV-ALTONAGA/Seltzer, 2019 WL 3712008, at *7 (S.D. Fla. May 29, 2019) (quoting *Alexander Proudfoot Co. World Headquarters v. Thayer*, 877 F.2d 912, 921 (11th Cir. 1989)). And contractual terms are given their plain meaning when terms are clear and unambiguous. *Id.* Here, the forum-selection clause encompasses "[a]ny claim or dispute between you and [Discord] that arises in whole or in part from these Terms or your use of the Service," which encompasses all of Plaintiff's claims. [Li Decl., Exh. C.]

### 3.       The Forum-Selection Clause is Enforceable

Finally, a forum-selection clause is enforceable unless the plaintiff makes a "strong showing" that (1) its formation was induced by fraud or overreaching; (2) the plaintiff would be

---

[3] All subsequent version of Discord's Terms have required federal lawsuits to be filed in the Northern District of California. [Li Decl., Exs. D-G.]

deprived of his day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy. *Carrigg v. Gen. R.V. Ctr., Inc.*, No. 3:18-cv-654-J-34PDB, 2018 WL 5904447, at *6 (M.D. Fla. Nov. 9, 2018).

None of these exceptions is present here.

First, there is no allegation that the forum-selection clause was induced by fraud or overreaching. Plaintiff is a Discord user that affirmatively sought to use Discord's services and agreed to the applicable terms. [*See, e.g.,* Compl. ¶ 17 (noting that "Plaintiff joined a chatroom online called 'Premium Signals,' which was hosted and owned by Discord.")). If Plaintiff did not want to agree to the Terms, he could have chosen not to use Discord's services. *See, e.g.*, *Soffin v. Echannel Network, Inc.*, No. 12-81279-CIV, 2014 WL 2938347, at *2 (S.D. Fla. June 30, 2014) (enforcing Facebook's forum-selection clause as to plaintiffs who agreed to the Terms when they signed up for accounts).

Second, litigating this case in the Northern District of California would not be so "inconvenien[t] or unfair" that Plaintiff would be deprived of his day in court. *Ideal Protein of Am., Inc. v. Allife Consulting, Inc.*, No. 8:19-CV-654-T-33CPT, 2019 WL 2358832, at *3 (M.D. Fla. June 4, 2019).  Indeed, by agreeing to the forum-selection clause when he accepted the Terms, Plaintiff has "waive[d] the right to challenge the preselected forum as inconvenient." *Carrigg*, 2018 WL 5904447 at *8 (quoting *Alt. Marine*, 571 U.S. at 64).

Third, the laws of the State of California are not so "fundamentally unfair" that Plaintiff would be deprived of any remedy that might be available. *Lipcon v. Underwriters at Lloyd's, London,* 148 F.3d 1285, 1296-97 (11th Cir. 1998). As noted below, the elements of the claims that Plaintiff raises are largely the same under both Florida and California law.

Finally, Plaintiff has not identified and cannot identify any reason why transferring the case would violate Florida's public policy. *Stone v. Barclays Bank PLC*, No. 9:16-CV-81875-RLR, 2017 WL 766355, at *3 (S.D. Fla. Feb. 28, 2017) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)) ("the Supreme Court has held that a forum-selection clause should be given 'controlling weight in all but the most exceptional cases' based on 'extraordinary circumstances unrelated to the convenience of the parties.'").

Accordingly, because the forum-selection clause here is mandatory, covers this dispute and is enforceable, Plaintiff's claims should be transferred to the Northern District of California.

**B.    Plaintiff's Claims Should Be Dismissed for Lack of Personal Jurisdiction.**

Alternatively, Plaintiff's claims should be dismissed because he has not met his burden to establish personal jurisdiction over Discord, which is headquartered in California, has no connection to Florida, and did not have any contacts directed towards Plaintiff in Florida. Fed. R. Civ. P. 12(b)(2); *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).

A court may exercise personal jurisdiction only to the extent permitted by Florida's long arm statute. *See* Fla. Stat. § 48.193(1)-(2). General personal jurisdiction under Florida's long arm statute is limited to only what is permissible under the federal Due Process Clause. *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010). Florida's long arm statute also permits specific personal jurisdiction, but that must also remain within the bounds of the federal Due Process Clause. *United Techs. Corp.*, 556 F.3d at 1274. Neither is met here.

**1.    General Jurisdiction Does Not Exist.**

Plaintiff has not alleged general personal jurisdiction over Discord. A corporation's place of incorporation and principal place of business are the "paradigm" bases for general jurisdiction (for Discord, those places are Delaware and California, respectively) and courts in other states

may only exercise general jurisdiction in "exceptional case[s]." *Daimler AG v. Bauman*, 134 S.

Ct. 746, 754, 761 (2014). "Exceptional cases" exist where a corporate defendant's operations in

another forum are "so substantial and of such a nature as to render the corporation at home in

that State." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quotation omitted).

Far from this being an "exceptional case," Discord has ***no connection*** with Florida—it is

located and headquartered in California, incorporated in Delaware, and has no offices or

employees in Florida. [Compl. ¶ 10; Li Decl. ¶¶ 1-8, Ex. B.] Indeed, Discord is not even

registered to do business in Florida. [Li Decl. ¶ 7.] Accordingly, there is no basis for general

jurisdiction.

### 2.     Specific Jurisdiction Does Not Exist.

Plaintiff also has not alleged specific personal jurisdiction over Discord. Florida's long-

arm statute provides for specific jurisdiction for, among other things, "any cause of action arising

from ... [c]omitting a tortious act within [Florida]." Fla. Stat. § 48.193(1)(a)(2).

Even so, this exercise of personal jurisdiction must comport with due process, which

requires courts to consider (1) whether the plaintiff's claims "arise out of or relate to" at least one

of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully

availed" himself of the privilege of conducting activities within the forum state, thus invoking

the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction

comports with "traditional notions of fair play and substantial justice." *Louis Vuitton Malletier,*

*S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (citation omitted).

Here, Plaintiff has not alleged any contacts by Discord with Florida, let alone ones

sufficient to confer specific personal jurisdiction. Again, Discord has no offices or employees in

Florida, no physical product inventory that it distributes to Florida, and it has no employment

relationship with the user who allegedly targeted Plaintiff. [Li Decl., ¶¶ 1-8, Ex. A.] At most, Plaintiff has alleged that Discord provided a free online platform, and that an unidentified Discord user stole Plaintiff's virtual currency after talking to him on that platform. This does not subject Discord to specific jurisdiction. *See Louis Vuitton Malletier*, 736 F.3d at 1357-58.

     **C.**     **Plaintiff Fails to State a Claim Against Discord.**

Even if the Court reaches the merits of Plaintiff's claims, Plaintiff's Complaint should be dismissed because Plaintiff has not stated and cannot state any claim against Discord.

Under Fed. R. Civ. P. 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotation marks omitted). This requires a plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Goldin v. Boce Grp., L.C.*, 773 F. Supp. 2d 1376, 1378 (S.D. Fla. 2011) ("To survive a motion to dismiss, a complaint must allege both a cognizable legal theory and sufficient facts to support it."). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Here, Plaintiff's claims are barred entirely by the CDA. They improperly seek to hold Discord, an interactive computer service, liable based only on the fact that an unidentified person used its platform to steal Bitcoin from Plaintiff, and Discord had allowed the thief to have an account. Further, Plaintiff has failed to allege sufficient facts to support his claims.

### 1.   Plaintiff's Claims Are Barred by the Communications Decency Act.

Section 230(c)(1) of the CDA provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The CDA's purpose is to encourage the development of online platforms and encourage Internet companies to exercise editorial control over material on their services. *Id*. § 230(b)(1), (4) (Congress's intention was to "promote the continued development of the Internet and other interactive computer services" and to encourage "the development and utilization of blocking and filtering technologies").

Accordingly, courts apply Section 230 immunity broadly "to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008) (en banc). A defendant is entitled to this immunity if (1) the defendant provides an "interactive computer service," (2) plaintiff's claim treats the defendant as the "publisher" or "speaker" of the offending content, and (3) the content was "provided by another information content provider." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009), *as amended* (Sept. 28, 2009).

CDA immunity applies so long as these requirements are met and the cause of action is not exempted. *See* 47 U.S.C. § 230(e)(1)-(5). "[W]hat matters is not the name of the cause of action. . . [but] whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of the content provided." *Barnes*, 570 F.3d at 1101-02. Indeed, "[t]he CDA preempts state law that is contrary to this subsection." *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006); *see also Dowbenko v. Google Inc.*, 582 Fed. App'x. 801, 804

(11th Cir. 2014); *Mezey v. Twitter, Inc.*, No. 1:18-cv-21069-KMM, 2018 WL 5306769, at *1 (S.D. Fla. July 19, 2018).[4]

Here, all three requirements for CDA immunity are easily satisfied and, therefore, Plaintiff's claims should be dismissed in their entirety without leave to amend.

### a.      Discord is an "Interactive Computer Service."

Discord meets the first requirement for CDA immunity because it provides an interactive computer service, which is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). An "access software provider" is "a provider of software (including client or server software), or enabling tools that do any one or more of the following: [] filter, screen, allow, or disallow content; [] pick, choose, analyze, or digest content; or [] transmit, receive, display, forward, cache, search, subset, organize, reorganize, or translate content." *Id*. § 230(f)(4).

As an information service and system and a website that transmits, receives, displays, organizes, and hosts content, provides software, and allows communications, Discord easily meets this definition. *See, e.g., Doe v. MySpace, Inc.*, 528 F.3d 413, 415 (5th Cir. 2008) (treating MySpace as an interactive computer service); *Green v. Am. Online (AOL)*, 318 F.3d 465, 469 (3d Cir. 2003) (finding that AOL is "undisputed[ly]" an interactive computer service); *Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1121 (N.D. Cal. 2016) (holding that Twitter is an interactive computer service); *see also Barnes*, 570 F.3d at 1101 (holding that Yahoo! is a provider of an

---

[4] In other words, "courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'  If it does, section 230(c)(1) precludes liability," *Fields*, 217 F. Supp. at 1121, including for civil rights causes of action that stem from editorial decisions, *see Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 631 (D. Del. 2007) (finding Google and Microsoft immune under the CDA from claimed civil rights violations "relating to the monitoring, screening, and deletion of content from their network").

interactive computer service because it allowed users to post public profiles on the Internet);
*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1093 (N.D. Cal. 2015)
(holding that Facebook is a provider of an interactive computer service because it "provides or
enables computer access by multiple users to a computer service").

**b.    Plaintiff's Claims Treat Discord as a Publisher.**

Discord also meets the second requirement for CDA immunity because Plaintiff's claims
treat Discord as a publisher and arise from publisher activity. Courts have held repeatedly that
where a person uses an online platform to conduct unlawful activity, such as creating false
profiles to engage in stalking, violating lease agreements, or other unlawful conduct, the platform
is being treated as a publisher and cannot be liable for the conduct. *See, e.g., Herrick v. Grindr
LLC,* 765 Fed. App'x. 586, 590 (2d. Cir. 2019) (holding that the CDA barred claims against
provider arising from a user's creation of a false dating profile); *Doe v. GTE Corp.*, 347 F.3d
655, 659 (7th Cir. 2003) (upholding dismissal of claims against service provider under the CDA
and noting "[t]hat web hosting services . . . may be used to carry out illegal activities does not
justify condemning their provision whenever a given customer turns out to be crooked"); *La
Park La Brea A LLC v. Airbnb, Inc.*, 285 F. Supp. 3d 1097, 1105 (C.D. Cal. 2017) (the CDA
barred claims against Airbnb relating to listings of properties that violated lease agreements).

For example, in *Doe v. MySpace*, 528 F.3d 413 (5th Cir. 2008), the Fifth Circuit found
that claims against the online social network MySpace were barred because the essence of
plaintiff's claim was that "[i]f MySpace had not published communications between Julie Doe
and Solis, including personal contact information … they never would have met and the sexual
assault never would have occurred." *Id.* at 419-20. Accordingly, plaintiff sought to hold
MySpace liable based on its "publishing, editorial and/or screening capacities" despite plaintiff's

15

position that it sought to hold MySpace liable for its failure to implement measures that would have prevented the communication. *Id.* To the contrary, the plaintiff's "allegations [were] merely another way of claiming that MySpace was liable for publishing communications and they speak to MySpace's role as a publisher of online third-party generated content." *Id.* at 420.

Likewise, here, the crux of Plaintiff's claims is that Plaintiff would not have been harmed if Discord had not published communications between Plaintiff and the user. And although Plaintiff, like the plaintiff in the *MySpace* case, might try instead to claim that his injury never would have happened if Discord had implemented protocols to prevent the interactions, that does not change the CDA analysis. Plaintiff is targeting Discord's publishing and screening activity.

### c.    The User Who Stole Plaintiff's Bitcoin is the Information Content Provider.

Finally, the user who stole Plaintiff's Bitcoin—not Discord—is the "information content provider." The user created the account at issue, made the false statements to Plaintiff that induced Plaintiff to allow access to his computer, and ultimately stole the Bitcoin. *See, e.g., Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124-25 (9th Cir. 2003). The third requirement for immunity is therefore met.

Having satisfied these three requirements, Discord is immune under Section 230(c)(1) of the CDA from all Plaintiff's claims arising from online interactions on Discord's platform—that is, all his claims—and this grant of legal immunity cannot be cured by amendment.

### 2.    Plaintiff Has Not Alleged and Cannot Allege any Viable Claims.

Even if all of Plaintiff's claims were not barred by the CDA, he has failed to plead their elements in any event. Plaintiff's Complaint therefore fails for these additional reasons.

### a. Plaintiff Fails to Plausibly Allege Negligence (Counts 1, 4, 5).

Plaintiff alleges several variations on negligence: negligence, negligent training and supervision, and negligent hiring and retention. All fail because Discord had no duty to Plaintiff.

### i. Plaintiff has not alleged a duty so all of his claims that are grounded in negligence fail.

Plaintiff's claims for negligence, negligent training and supervision, and negligent hiring and retention fail because Plaintiff has not identified any duty that Discord owed to Plaintiff.[5] *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1339 (11th Cir. 2012) ("establishing the existence of a duty under [Florida's] negligence law is a minimum threshold legal requirement that opens the courthouse doors ... and is ultimately a question of law for the court rather than a jury.").

Plaintiff claims that Discord had a duty to (1) know the true identity of its moderators, (2) put in place procedures and security protocols to identify, track, and ascertain the identity of its moderators, and (3) prevent employees, moderators, staff, or agents from misappropriating currency and other criminal activity. [Compl. ¶¶ 107-108.] However, Plaintiff does not identify any source that these duties arise from and, indeed, there is none. *See, e.g., Worldwide Media, Inc. v. Twitter, Inc.*, No. 17-CV-07335-VKD, 2018 WL 5304852, at *9 (N.D. Cal. Oct. 24, 2018) (dismissing negligence claims against Twitter because the plaintiff failed to identify the source of Twitter's alleged duty regarding security protocols).

Moreover, all the duties Plaintiff identifies with regard to content on Discord, monitoring content, the conduct of users, or disputes between users of the service, are expressly disclaimed in the Terms governing the parties' relationship. For example:

---

[5] Similarly, under California law, for negligence, a plaintiff must plead (1) duty; (2) breach; (3) causation; and (4) damages. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003).

- "The Service provides communication channels such as forums, communities, or chat areas … designed to enable you to communicate with other Service users. The Company has **no obligation to monitor these communication channels** but it may do so in connection with providing the Service."[6]

- "You acknowledge that any user content (including without limitation chats, postings, or materials posted by users) on the Communication Channels is **neither endorsed nor controlled by us**. The Company will not under any circumstances be liable for any activity within Communication Channels. The Company is **not responsible** for information that you choose to share on the Communication Channels, **or for the actions of other users**."

- "The Company does not guarantee the accuracy, quality, or integrity of any user content posted. … You agree that **the Company will not under any circumstances be liable for any user content**, including, but not limited to, errors in any user content, or any loss or damage incurred by use of user content."

- "**IN NO EVENT WILL THE COMPANY, BE LIABLE TO YOU** … **FOR** ANY CONSEQUENTIAL, INCIDENTAL, SPECIAL, PUNITIVE OR OTHER INDIRECT DAMAGES, INCLUDING ANY LOST PROFITS OR **LOST DATA, ARISING FROM YOUR USE OF THE SERVICE** …"

- "**You are solely responsible for your interaction with other users of the Service** and other parties that you come in contact with through the Service. The Company hereby disclaims any and all liability to you or any third party relating to your use of the Service. The Company reserves the right, but has no obligation, to manage disputes between you and other users of the Service."

[Li Decl, Ex. C (emphases added).]

Thus, Discord did not undertake any duty to Plaintiff and, indeed, expressly disclaimed any such duty. *See, e.g., Young v. Facebook, Inc.*, No. 5:10-CV-03579-JF/PVT, 2010 WL 4269304, at *5 (N.D. Cal. Oct. 25, 2010) ("Young alleges that Facebook had a 'duty to use due care when hiring and training personnel to monitor and enforce website activity according to their outlined contractual agreement' … However, as noted above, the Statement of Rights and Responsibilities expressly disclaims any duty to provide for the safety of Facebook users.").

---

[6] Discord's guidelines, incorporated into the Terms, state "we do not actively monitor and aren't responsible for any activity or content that is posted…." [Schwartz Decl., Ex. B.] The same or similar disclaimers are found in all versions of the Terms. [Li Decl., Exs. C-G.]

Additionally, a duty of care arises only as to ***foreseeable*** injuries. *See, e.g., Pinchinat v. Graco Children's Prods.*, Inc., 390 F. Supp. 2d 1141, 1149 (M.D. Fla. 2005) (finding that "a manufacturer must take reasonable precautions to avoid reasonably foreseeable injuries to the users of its products"); *Posen Const., Inc. v. Lee Cty.*, 921 F. Supp. 2d 1350 (M.D. Fla. 2013) ("[u]nder Florida law, supervising architects and engineers are liable for the foreseeable injuries to general contractors proximately caused by their negligent conduct"). Indeed, the duties that Plaintiff identifies for moderators do not include any off-platform responsibilities that would involve computer access. And further, it is implausible to suggest that even if there was some duty, Discord could have been expected to foresee that an unidentified user would steal Bitcoin from Plaintiff. It simply was not foreseeable that Plaintiff would have allowed a Discord user to access Plaintiff's computer and obtain his Bitcoin, particularly in light of the plain language of the Terms.

### ii. Plaintiff has not alleged an employment relationship and his negligence claims fail for that additional reason.

Plaintiff's claims for negligent hiring, supervision, and retention fail for the additional reason that Plaintiff has not plausibly alleged an employment relationship between Discord and the user. *English v. Pickles Rest. Grp., LLC*, No. 6:06-cv-1561-Orl-28Dab, 2007 WL 9719294, at *3 (M.D. Fla. Apr. 4, 2007); *see also Stires v. Carnival Corp.,* 243 F. Supp. 2d 1313, 1318 (M.D. Fla. 2002).[7] In fact, Plaintiff claims that Discord did not even know the identity of the user, and he cites an article that confirms that Discord does not employ any moderators. [*Id.* ¶¶ 85-86, 107, 111.; *see id.* ¶ 5 n.2 (citing https://gizmodo.com/how-a-video-game-chat-client-became-the-web-

---

[7] California law also requires Plaintiff to plausibly allege the user is a Discord employee. *See Doe v. Uber Techs., Inc.*, 184 F. Supp. 3d 774, 788 (N.D. Cal. 2016) ("[A]n employer may be held directly liable for the behavior of an unfit employee where the employer was negligent in the hiring, training, supervising, or retaining of that employee.").

s-new-cessp-1792039566) ("[Discord] has only five 'customer experience' personnel and ***no moderators on its staff***.") (emphasis added); Schwartz Decl., Ex. A.] It strains credulity that the user is a Discord employee, and Discord cannot be liable for negligently hiring, supervising, or retaining a non-employee.

> **b.    Plaintiff Fails to Allege a Claim for *Respondeat Superior***

Plaintiff's *respondeat superior* claim fails because Discord is not the user's employer and an employer is liable for an employee's intentional torts only if the alleged wrongs were committed within real or apparent scope of employer's business. S*parks v. Jay's A.C. & Refrigeration, Inc.*, 971 F.Supp. 1433, 1436 (M.D. Fla. 1997). Conduct is within the scope of employment if conduct is the kind the employee is hired to perform, it occurs within the time and space limits of the job, and it is activated at least in part by a desire to serve the employer. *Id.*[8]

Again, as evidenced by Plaintiff's own Complaint, the user who stole his Bitcoin is not a Discord employee, and Plaintiff's *respondeat superior* claim fails for this reason alone. But even if an employment relationship existed, Discord could not be liable as the employer because the user's actions could not have been foreseeable to Discord, nor were they motivated by a desire to serve Discord. Rather, the user's actions were criminal in nature and well outside the scope of any purported job responsibilities, which relate only to helping Discord users with issues they experience in chat rooms (and not off-platform) and clearly would not encompass stealing from users of the service. [Compl. ¶¶ 79, 101, 103.] Plaintiff's *respondeat superior* theory fails.

---

[8] Similarly, under California law, "employers are liable for acts of their employees occurring within the scope of their employment." *Nationwide Mut. Ins. Co. v. Liberatore*, 408 F.3d 1158, 1163 (9th Cir. 2005).

###### c.    Plaintiff Fails to Plausibly Allege a Claim for Aiding and Abetting Conversion.

Plaintiff's conclusory allegations are insufficient to state an aiding and abetting claim. In Florida, aiding and abetting requires: (1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by alleged aider and abettor; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor. *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238 (M.D. Fla. 2013).[9]

First, Discord only acquired knowledge of the user's conversion after Plaintiff notified Discord. *Id.* ¶¶ 59-61. Plaintiff alleges no facts to show that Discord knew of the conversion beforehand. *Id.* at 1244 ("circumstantial evidence must demonstrate that the aider-and-abettor *actually knew* of the underlying wrongs committed") (emphasis in original); *see also Angell v. Allergan Sales, LLC*, No. 3:18-CV-282-J-34JBT, 2019 WL 3958262, at *9 (M.D. Fla. Aug. 22, 2019) (finding that "allegations which demonstrate merely *constructive* knowledge, recklessness or gross negligence cannot satisfy the 'knowledge' element of an aiding and abetting claim under Florida law.") (emphasis added).

Second, substantial assistance requires significant, active, and knowing participation in the wrong; mere inaction is not enough.  *In re Palm Beach Fin. Partners*, *L.P.*, 517 B.R. 310, 348 (Bkrtcy. S.D. Fla. 2013) (finding that the "allegations, which amount to nothing more than inaction, do not rise to [the] level of substantial assistance and thus cannot provide the basis for

---

[9] California law similarly requires a defendant's "actual knowledge of the specific primary wrong the defendant substantially assisted" which is construed as "an intentional participation *with knowledge of the object to be attained*." *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1145-46 (2005) (emphasis in original); *see also Howard v. Superior Court*, 2 Cal. App. 4th 745, 749 (1992), *modified* (Feb. 10, 1992) (aiding and abetting "necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act").

aiding and abetting liability."); *see also In re Rollaguard Sec., LLC*, 591 B.R. 895, 923 (Bkrtcy.

S.D. Fla. 2018) (quoting *Hsi Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1098 (11th

Cir. 2017)).

 At most, Plaintiff alleges that Discord failed to act to prevent the user's misappropriation

of his Bitcoin. *Id.* ¶¶ 96-97 (alleging that Discord aided and abetted the user's conversion by

ignoring policies and procedures, by not implementing protocols to know the true identity of its

moderators, and by allowing criminal and illicit activity on its platform.). This is not significant,

active, and knowing participation and is therefore insufficient. Accordingly, like the rest of his

claims, Plaintiff's claim for aiding and abetting conversion fails.

  **D. Plaintiff Should Be Denied Leave to Amend.**

 The deficiencies in Plaintiff's Complaint are incurable. "A proposed amendment may be

denied for futility when the complaint as amended would still be properly dismissed." *Coventry

First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010) (citation and quotations omitted).

Here, Plaintiff cannot amend his claims to cure the deficiencies identified. At bottom, Discord is

not liable for the user's actions, and there is no theory that can overcome this flaw. Accordingly,

if the Court reaches the merits of Plaintiff's claims, they should be dismissed with leave to

amend. *See, e.g., Mezey*, 2018 WL 5306769 (dismissing claims barred by CDA without leave to

amend).

**IV. CONCLUSION**

 For these reasons, as might be further argued on reply, Discord respectfully requests that

the Court (1) transfer the case pursuant to the parties' forum-selection clause or (2) dismiss the

Complaint for lack of personal jurisdiction. If the Court reaches the merits of the claims, Discord

respectfully requests that the Court dismiss the case with prejudice for failure to state a claim.

WHEREFORE, Defendant Discord, Inc. respectfully requests this Court enter an Order dismissing Plaintiff Logan Bachstein's Complaint [D.E. 1] for the reasons set forth herein, together with such further and other relief as this Court deems just and proper.

## CERTIFICATE OF CONFERRAL

Prior to filing this Motion to Dismiss, the undersigned conferred with counsel for Plaintiff in a good faith effort to resolve the issues raised herein. Counsel for Plaintiff advised that he does not agree to the relief sought herein.

Dated: September 23, 2019

Respectfully submitted,

  /s/ Lawren A. Zann
Beth-Ann E. Krimsky, Esq.
Fla. Bar No. 968412
Lawren A. Zann, Esq.
Fla. Bar No. 42997
GREENSPOON MARDER LLP
200 East Broward Boulevard
Suite 1800
Fort Lauderdale, FL 33301
Tel: (954) 527-2427
Fax: (954) 333-4027
beth-ann.krimsky@gmlaw.com
lawren.zann@gmlaw.com

-and-

Julie E. Schwartz, Esq.
*Pro Hac Vice* Admitted
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 93404
Tel: (650) 838-4490
Fax: (650) 838-4690
jschwartz@perkinscoie.com

*Attorneys for Discord, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 23, 2019, I electronically filed the foregoing Motion to Transfer or, in the alternative, Dismiss with the Clerk of the Court using the CM/ECF system, which foregoing document is also being served this date on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

 /s/ Lawren A. Zann        
Lawren A. Zann
